Stephen ABRAMS, Plaintiff,

v.

OCCIDENTAL PETROLEUM CORPO-
RATION, Tenneco, Inc., and Kern Coun-
ty Land Company, Defendants.

Isaac MUKAMAL, Plaintiff,

v.

OCCIDENTAL PETROLEUM CORPO-
RATION, Tenneco, Inc., KCL Corpo-
ration and Kern County Land Compa-
ny, Defendants.

KCL CORPORATION, Plaintiff,

v.

OCCIDENTAL PETROLEUM CORPO-
RATION, Defendant.

COLONIAL REALTY CORPORATION,
Plaintiff,

v.

OCCIDENTAL PETROLEUM CORPO-
RATION et al., Defendants.

Nos. 67 Civ. 2858, 67 Civ. 3291,
67 Civ. 4042, 67 Civ. 4977.

United States District Court
S. D. New York.

June 14, 1968.
As Amended June 18, 1968.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff Stephen Abrams; Benedict Wolf, New York City, of counsel.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff Isaac Mukamal; Stanley L. Kaufman, Shephard S. Miller, New York City, of counsel.

Pomerantz, Levy, Haudek & Block, New York City, for plaintiff Colonial Realty Corporation; Abraham L. Pomerantz, New York City, of counsel.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendants Tenneco, Inc., Tenneco Corporation and KCL Corporation; David R. Hyde, New York City, of counsel.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant Occidental Petroleum Corporation; Simon Rose, Neil A. Pollio, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendants Kern County Land Co., Peter Cook, Jr., Thomas M. McDaniel, Jr., Charles A. Anderson, Dwight M. Cochran, Herbert L. Reid; Robert F. Dobbin, New York City, of counsel.

## OPINION

HERLANDS, District Judge:

The four above-entitled actions have been designated herein as Action No. 1, Action No. 2, Action No. 3 and Action No. 4, respectively, following the sequence in which they were commenced.

Action No. 1 was commenced on July 25, 1967; Action No. 2 on August 28, 1967; Action No. 3 on October 17, 1967; Action No. 4 on December 19, 1967.

The plaintiffs in Actions Nos. 1, 2 and 4 are stockholders of Kern County Land Company, a California corporation now dissolved (hereinafter referred to as "old Kern").

Occidental Petroleum Corporation (hereinafter referred to as "Occidental") is named as a defendant in all four actions.

Tenneco, Inc., named as a defendant in Actions Nos. 1, 2 and 4, is the parent company of a subsidiary named Tenneco Corporation, a Delaware Corporation. Tenneco Corporation in turn owns all of the shares of KCL Corporation, a Delaware Corporation. KCL Corporation has had its name changed to "Kern County Land Company", a Delaware Corporation (hereinafter referred to as "new Kern"), to be distinguished from old Kern. KCL Corporation is a defendant in Actions Nos. 2 and 4. It is the plaintiff in Action No. 3. Tenneco Corporation is a defendant in Action No. 4.

The four lawsuits originate out of the same basic transactions and underlying facts. While the four complaints are structured upon the same fundamental acts, there are some differences in legal theory for certain causes of action as pleaded in the various complaints, as will hereinafter be detailed.

Now before the Court are three motions:

(1) A motion by Occidental (Motion No. 76, Motion Calendar of March 12, 1968) requesting, primarily, that the four actions be consolidated, at least for pretrial purposes; that other stockholders of old Kern be stayed from instituting hereafter new derivative or representative actions; and that general or lead counsel be appointed to coordinate the proceedings in the four actions.

(2) A motion (Motion No. 77, Motion Calendar of March 12, 1968) by Abrams, the plaintiff in Action No. 1, to intervene in Action No. 3.

(3) A motion (Motion No. 78, Motion Calendar of March 12, 1968) by Mukamal, the plaintiff in Action No. 2, for partial summary judgment on the first count of the complaint in Action No. 2. This motion seeks an adjudication of Occidental's liability but not of the amount of its allegedly realized profits.

The disposition of these three motions requires an analysis of the complaints in the four actions with a view to determining whether there are common questions of law and fact and other circumstances warranting consolidation, the appointment of general counsel and other relief and, on the other hand, whether there are conflicts of interest, opposing positions and other circumstances militating against the granting of the prayed for relief.

Action No. 1 is a derivative action by a stockholder of old Kern against Occidental, Tenneco, Inc., and Kern County Land Company. The complaint contains four counts. In the first three counts, the plaintiff seeks to recover for old Kern the profits allegedly realized by Occidental. The fourth count claims damages allegedly suffered by old Kern and demands an accounting by Occidental and Tenneco, Inc. The $8,866,230 damages demanded in the fourth count are in the same amount sought in the first three counts in the form of short-swing profits allegedly realized by Occidental.

The first three counts are grounded upon Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) [hereinafter "Section 16(b)"]. The fourth count, alleging pendent jurisdiction, charges Occidental's violation of its common-law fiduciary duties to other stockholders of old Kern.

The transactions about to be described, forming the crux of the complaint in Action No. 1, also constitute the core of the complaints in the other three actions (with some differences of legal theory for pleading purposes and with some minor variations of factual detail).

Between approximately May 8, 1967 and approximately June 9, 1967, Occidental purchased approximately 887,000 shares of the capital stock of old Kern, the purchase price of each of such shares being about $83.50. Occidental owned or became (as a result of the aforesaid purchases) the owner of more than ten percent of old Kern stock. This is the "purchase" constituting one of the predicates of the alleged Section 16(b) claim.

By virtue of Occidental's position as the owner of approximately 887,000 shares (out of approximately 4,330,000 shares outstanding) of old Kern stock, its vote with respect to a proposed merger between old Kern and Tenneco, Inc. was of crucial importance. It is charged that Occidental was bought off or given a premium or preference by Tenneco, Inc. for the purpose of having Occidental either vote in favor of the proposed merger or at least to abstain from voting against such merger.

The above-mentioned merger involved a transaction between old Kern and Tenneco, Inc., the latter acting either in its own name or through its subsidiary, KCL

Corporation. On or about May 21, 1967, the directors of old Kern voted to enter into an agreement selling its assets and business to Tenneco, Inc. (or to KCL Corporation). The old Kern stockholders approved the sale on July 17, 1967. Transfer of the assets was completed on August 30, 1967.

As part of this transaction (variously denominated as a sale, merger or plan of reorganization) Tenneco, Inc. agreed to issue 4,330,440 shares of its $5.50 Cumulative Convertible Preference Stock (hereinafter referred to as "Tenneco preference stock"). This Tenneco preference stock was to be issued to old Kern who, in turn, would distribute said 4,330,440 shares of preference stock to the stockholders of old Kern on a share-for-share exchange basis.

Inasmuch as Occidental was a stockholder of about 887,000 shares of old Kern stock, on July 17, 1967 Occidental received or became entitled to receive 887,000 shares of the Tenneco preference stock.

In June 1967 (June 2, 1967), Occidental granted to Tenneco Corporation (a subsidiary of Tenneco, Inc.) an option covering the approximately 887,000 shares of Tenneco preference stock that Occidental received or had a right to receive. Under the terms of the option agreement, Tenneco Corporation had the privilege of purchasing approximately 887,000 shares (actually 886,623 shares) of Tenneco preference stock at $105. a share, the aggregate price being $93,-095,415. The cost of the option was $10. per share, that is, approximately $8,866,230 paid by Tenneco Corporation to Occidental. Occidental could retain this amount in the event that the option was not exercised but, if and when the option was exercised, that amount would be credited against the purchase price of the Tenneco preference stock. It was agreed that Tenneco Corporation would not exercise its option until after December 9, 1967 (which ostensibly would be more than six months after the last date when Occidental had purchased old Kern stock).

The three defendants in Action No. 1 are also named as defendants in Action No. 2. However, Action No. 2 includes a fourth defendant, KCL Corporation, a subsidiary of Tenneco, Inc.

The complaint in Action No. 2 contains four counts. KCL Corporation is charged in Action No. 2 as the transferee of all of old Kern's business and assets in the Kern-Tenneco deal, characterized as a "plan of reorganization".

The first three counts of this complaint are based upon violations of Section 16 (b). The first and third counts seek $20,000,000 profits allegedly realized by Occidental. The second count seeks $8,-866,230 profits allegedly realized by Occidental.

The fourth count is based upon an alleged violation of Section 10(b) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b–5. This count, pleading pendent jurisdiction of a common-law claim, seeks $8,866,230 and, in addition, punitive damages. Charging a conspiracy, it asserts that KCL Corporation participated together with Tenneco, Inc. and Tenneco Corporation in the breach of Occidental's fiduciary duty to old Kern and the other stockholders of old Kern. It accuses Occidental of having agreed to sell its votes vis-à-vis the Kern-Tenneco deal in return for a preference or premium. It also accuses the defendants of non-disclosure of material facts, of making false and misleading statements in the Kern proxy statement, and of perpetrating deceitful acts on the other Kern stockholders in the purchase by Occidental of old Kern stock from such other stockholders.

The complaint in Action No. 2 also demands a declaratory judgment adjudicating the respective rights of old Kern and its shareholders, on the one hand, and the rights of KCL Corporation and Tenneco, Inc., on the other hand, with respect to the funds realized by way of recovery under the first three counts.

The claim pleaded in the fourth count thus reflects a legal theory not set forth in Action No. 1.

Action No. 3 is a direct action by KCL Corporation against Occidental, named as the sole defendant. The plaintiff, asserting that it is the assignee of all claims and choses in action of old Kern (including the claim for insider's profits), seeks to have Occidental account for all profits realized from the transactions set forth in the four counts of the complaint, which are grounded basically upon Section 16(b) violations. Unlike Actions Nos. 1, 2 and 4, Action No. 3 does not name as a defendant either Tenneco, Inc. or Tenneco Corporation. As already noted, KCL Corporation, the plaintiff in Action No. 3, is owned by Tenneco Corporation which, in turn, is a subsidiary of Tenneco, Inc.

Action No. 4, like Actions Nos. 1 and 2, is a derivative action by a Kern stockholder. The first count is directed against all eighteen defendants except old Kern. It is predicated upon the asserted facts that Occidental's opposition to the Kern-Tenneco merger had been bought off by a premium of approximately $8,866,230 and that Occidental's breach of a duty owed by it toward the other old Kern shareholders was effected by a conspiracy, scheme to defraud and deceit on the part of the named defendants. The second count charges waste of the corporate assets of old Kern and other violations of law by all defendants. The third count charges a Section 16(b) violation by Occidental and old Kern and seeks to recover the resulting short-swing profits. While the complaint in Action No. 4 is somewhat differently worded than the complaints in Actions Nos. 1, 2 and 3 and there are some differences in legal theory, the underlying acts and transactions relied upon to establish liability are virtually the same as those pleaded in the other actions.

The foregoing outline of the four complaints demonstrates they share common issues of law and fact; and that the various transactions and interests involved in the four actions are closely interrelated, if not identical.

Consolidation for pre-trial purposes would accomplish great convenience and economy in the administration of the litigation and would tend to avoid any unnecessary costs or delay. F.R.Civ.P. Rule 42(a) seeks to avoid overlapping duplication in motion practices and pre-trial procedures occasioned by competing counsel representing different plaintiffs in separate stockholder derivative actions. The appointment of a general counsel for pre-trial purposes would constitute an effective means of channeling the efforts of counsel along constructive lines.

A consolidation under Rule 42(a) is permitted as a matter of convenience and economy in administration. Such consolidation does not merge the four actions into a single cause; nor does it change the rights of the parties; nor does it make those who are parties in one action parties in another. The separate actions are not merged.

By such a procedure, one general counsel is not substituted for the counsel of each party-plaintiff's choice. The function of general counsel is merely to supervise and coordinate the conduct of plaintiffs' cases, at this time only for pre-trial purposes.

An orderly and expeditious disposition at trial is dependent, in large part, on the manner in which the pre-trial proceedings are conducted. The objectives of expediting the proceedings and avoiding needless time and expense to the litigants and to the Court are as desirable and as attainable in the pre-trial period as during the trial. Therefore, the benefits achieved by pre-trial consolidation and the pre-trial appointment of general counsel, whereby motions and discovery proceedings will be coordinated and channeled, will most certainly redound to the benefit of all parties to the litigation.

The Court of Appeals in MacAlister v. Guterma, 263 F.2d 65, 69–70 (2nd Cir. 1958) said: "Relief of this type is concededly extraordinary. It should be granted only under compelling circumstances and should not be resorted to where other more conventional remedies will suffice."

The facts before the Court show sufficient justification for the relief requested, which the Court regards as efficacious to avoid the consequences of duplication and conflict. The Court is of the opinion that, in all likelihood, counsel for the various plaintiffs will be able to work harmoniously under the guiding hand of one general counsel during the pre-trial stage.

In view of the foregoing, the Court disposes of the motions as follows:

### Motion by Occidental (Motion No. 76, Calendar of March 12, 1968)

█ This motion is granted to the following extent and upon the following conditions:

(1) Actions Nos. 2, 3 and 4 are consolidated with Action No. 1 for the purposes of pre-trial discovery and inspection and any other pre-trial motions and proceedings.

(2) After all pre-trial motions and proceedings shall have been completed, any party may move for the consolidation of some or all the foregoing actions for the purpose of trial. At present, the Court neither expresses nor intimates any opinion concerning the merits of a consolidation for trial purposes.

(3) General counsel is appointed for the plaintiffs in Actions Nos. 1, 2 and 4 to supervise, coordinate and direct all pre-trial motions and proceedings to be had in said actions.

General counsel shall function without infringing upon the sovereignty of the several plaintiffs' attorneys. General counsel shall initiate all discovery and inspection proceedings, after having consulted with the various plaintiffs' attorneys and after having drafted and circulated among all plaintiffs' attorneys (for their criticisms, additions and suggestions) proposed interrogatories and discovery and inspection motions. In the event of a failure of agreement, the dissident attorney may apply to the Court. In the conduct of depositions, general counsel shall start questioning, to be followed by plaintiffs' attorneys in the order of the commencement of the actions.

(4) The scope of the aforesaid appointment of general counsel is limited, at present, to discovery and inspection proceedings and any other pre-trial motions, proceedings, including conferences.

There shall be reasonable compensation for the services of general counsel in an amount to be fixed by the Court; and said amount shall be payable by such parties and in such proportions as the Court shall determine after appropriate hearing.

(5) After all pre-trial motions and proceedings shall have been completed, any party may move for the continuation of general counsel for the purpose of trial with respect to some or all of said actions. At present, the Court neither expresses nor intimates any opinion concerning the merits of a continuation of general counsel for trial purposes.

(6) Wolf, Popper, Ross, Wolf & Jones, 845 Third Avenue, New York, N. Y., is hereby designated and appointed as general counsel.

[7] (7) The Court denies that branch of the motion which seeks to stay, pending the hearing and determination of Actions Nos. 1, 2, 3 and 4, all stockholders of Kern County Land Company ("old Kern") who have not heretofore brought a derivative action on its behalf or a class action on behalf of all its shareholders from instituting any such action based on any of the acts and transactions complained of in any of the complaints filed in Actions Nos. 1, 2, 3 and 4. At present, the Court finds the movant's fears of being deluged with similar derivative stockholder's suits to

be based on mere surmise and speculation. If such fears should prove well-founded, the Court will then consider the propriety of issuing stays pending the determination of the actions now pending, should the interests of justice so dictate. MacAlister v. Guterma, 263 F.2d 65, 71 (2nd Cir. 1958) affirming 23 F.R.D. 124 (S.D.N.Y.1958).

(8) If, at any time during the proceedings conducted pursuant to this order, it shall appear that the interests of justice or the orderly expedition of proceedings require or indicate the propriety of amending the said order, any party may move this Court for appropriate relief.

(9) The time of Occidental to answer the complaints herein is extended to twenty days after the date of the filing of this order.

So ordered.

### Motion by Abrams to Intervene (Motion No. 77, Calendar of March 12, 1968)

■ This motion is granted in order to enable the movant-Abrams to prove, if he can, that the right to the alleged insider's profits involved in Action No. 3 belongs to Kern County Land Company ("old Kern") or its stockholders and not to KCL Corporation. Kern County Land Company ("old Kern"), represented derivatively by said movant, has an interest in Action No. 3 because he is claiming the same fund that KCL Corporation seeks, i. e. the insider's profits allegedly realized by Occidental Petroleum Corporation. Kern County Land Company's interest would be adversely affected if KCL Corporation should secure a judgment without Kern County Land Company's having had an oppor-

tunity to present its claim in Action No. 3. Kern County Land Company's interest in the property which is the subject of Action No. 3 is not represented (adequately or otherwise) by KCL Corporation. Whether considered as "intervention of right" [F.R.Civ.P. 24(a) (2)] or as "permissive intervention" [F.R. Civ.P. 24(b) (2)], the movant is entitled to intervene in Action No. 3.

So ordered.

### Motion by Mukamal for Partial Summary Judgment (Motion No. 78, Calendar of March 12, 1968)

■ A number of factors—the complexity of the matter, the difficulty of the technical and legal interpretation of voluminous documents, the novelty of the questions posed, the critical impact upon the numerous parties to the four pending actions, and the importance of the litigation to the public—persuasively demonstrate that the determination of this summary judgment motion should be stayed and held in abeyance until the general counsel appointed herein shall have had an opportunity to review the pending proceedings and to ascertain and coordinate the positions of the various plaintiffs vis-à-vis this particular motion, including a definitive position as to what transactions (alone or in combination) constitute the allegedly matching "purchase" and "sale" in violation of Section 16(b).

Accordingly, this motion for partial summary judgment on the first cause of action in Action No. 2 is stayed pending approval and adoption or other appropriate action in relation thereto by the general counsel designated and appointed by the Court herein.

So ordered.