Stephen ABRAMS, Plaintiff,

v.

OCCIDENTAL PETROLEUM CORPORA-
TION et al., Defendants,

and

Kern County Land Company, a Delaware
Corporation, et al., Defendants to
Counterclaims.

Action No. 1

Isaac MUKAMAL, Plaintiff,

v.

OCCIDENTAL PETROLEUM CORPORA-
TION et al., Defendants,

and

Dwight M. Cochran et al., Defendants
to Counterclaims.

Action No. 2

KERN COUNTY LAND COMPANY, a
Delaware Corporation, Plaintiff,

and

Stephen Abrams, Plaintiff-Intervenor,

v.

OCCIDENTAL PETROLEUM CORPORA-
TION, a California Corporation,
Defendant,

and

Tenneco Inc., a Delaware Corporation,
et al., Defendants to Counterclaims.

Action No. 3

COLONIAL REALTY CORPORATION,
Plaintiff,

v.

OCCIDENTAL PETROLEUM CORPORA-
TION et al., Defendants.

Action No. 4

Nos. 67 Civ. 2858, 67 Civ. 3291, 67 Civ. 4042
and 67 Civ. 4977.

United States District Court,
S. D. New York.

Nov. 27, 1970.

Supplemental Opinion Jan. 27, 1971.

Second Supplemental Opinion
Feb. 18, 1971.

See also D.C., 47 F.R.D. 301.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City for defendants Tenneco, Inc. and Tenneco Corp. and plaintiff KCL Corp., David R. Hyde, New York City, of counsel.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff Mukamal; Stanley L. Kaufman, New York City, of counsel.

Wolf, Popper, Ross, Wolf & Jones, New York City, Gen. Counsel for plaintiffs (other than KCL Corp.); Benedict Wolf, New York City, of counsel.

Pomerantz, Levy, Maudek & Block, New York City, for plaintiff Colonial Realty Corp.; Abraham L. Pomerantz, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendants Kern County Land Co., Dwight M. Cochran and George Montgomery; S. Hazard Gillespie, New York City, of counsel.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant Occidental Petroleum Corp.; Louis Nizer, Simon Rose, New York City, of counsel.

PALMIERI, District Judge.

These proceedings relate to the liability under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), of Occidental Petroleum Company (Occidental) for short-swing profits from the purchase and sale of securities. Several motions for summary judgment are presently before the Court. They grow out of four suits initiated in this court against Occidental for its part in a series of transactions between May and December, 1967, relating to Occidental's attempt to take over a prosperous California corporation, the Kern County Land Company (Old Kern); and Old Kern's subsequent merger with a subsidiary of Tenneco Inc. (Tenneco). Three of the suits, 67 Civ. 2858, 67 Civ. 3291, and 67 Civ. 4977 (Actions Nos. 1, 2 and 4 respectively), were brought by stockholders of Old Kern; the remaining suit, 67 Civ. 4042 (Action No. 3), was brought by the subsidiary of Tenneco

which succeeded to the business and assets of Old Kern. As the discussion, findings and conclusions which follow indicate, this Court rules in favor of the plaintiff in Action No. 3.

Old Kern, incorporated in California before 1900, had by 1967 developed a multi-million dollar diversified enterprise centered on real estate, oil and gas properties as well as agricultural and livestock interests, located primarily in California; its stock was listed for trading on the New York Stock Exchange and the Pacific Coast Stock Exchange, and between January 1, 1966, and May 5, 1967, had traded at prices between $56.00 per share and $76.25 per share. Occidental is also a California corporation. In 1967 its basic business activity involved the production and sale of petroleum, natural gas, coal, sulphur, and fertilizers. Tenneco, a Delaware corporation, at the time was the parent of a group of companies whose primary activities were the production of petroleum and natural gas in the Gulf Coast region and its distribution by means of an extensive pipeline network to the Northeastern and Midwestern areas of the country. Among Tenneco's subsidiaries was the Tenneco Corporation, which was the immediate parent within the Tenneco family of a new Delaware corporation (hereinafter New Kern) formed to succeed to the business of Old Kern.[1]

As part of its expansion program, in the early part of 1967, Occidental approached the management of Old Kern to explore merger possibilities. When rebuffed by Old Kern, Occidental made a public tender offer in May, 1967, for the purpose of acquiring over 20 percent of the outstanding common stock of Old Kern at a price more than 30 percent higher than the then-current market price of the stock. The management of Old Kern opposed Occidental's takeover bid, and by way of defensive strategy agreed with Tenneco upon a sale of assets; the agreement was embodied in a document (the Plan) dated June 1, 1967, subject to the approval of the stockholders of both companies. Under the Plan, New Kern was to acquire all of the assets and business of Old Kern; in exchange, the shareholders of Old Kern would receive shares of a new class of Tenneco convertible preference stock on the basis of one Tenneco share for each share held of Old Kern stock. By the end of May, 1967, Occidental had become the holder of 883,381 shares, the largest single block of Old Kern stock and more than 20 percent of the total shares outstanding.

On June 2, 1967, Occidental entered into an agreement with the Tenneco Corporation under which, in substance, Tenneco Corporation acquired an option to purchase the shares of the new convertible preference stock of Tenneco which Occidental would receive as an Old Kern shareholder upon consummation of the sale of assets to Tenneco; Occidental was to be paid $105 per share for its holding in the new Tenneco stock. Occidental thereafter desisted from any further opposition, and in a letter, read at the Old Kern stockholders' meeting of July 17, 1967, at which the Plan was approved, Occidental offered its opinion that the Plan was a favorable arrangement for Old Kern shareowners.

When it became known that the Tenneco-Old Kern Plan was scheduled for a closing within six months of Occidental's purchases of Old Kern stock in May, 1967, Occidental sought a ruling from the Securities and Exchange Commission (SEC) exempting it from any liability under Section 16(b). It was unsuccessful. Numerous suits were brought in

1. At the closing, title to the assets and business of Old Kern was taken by Tenneco in the name of KCL Corp., a Delaware corporation and a new subsidiary of Tenneco, formed for the sole purpose of receiving Old Kern's assets. After the closing the name of KCL Corp. was changed to the Kern County Land Company. The term New Kern is used herein to encompass both KCL Corp. and the Kern County Land Company, which are deemed for all relevant purposes to be the same entity.

various courts in Texas, Nebraska and California, initiated by Old Kern stockholders, owners of miniscule numbers of shares, and which sought to delay or enjoin the closing. These suits notwithstanding, the closing of the Plan was held on August 30, 1967. Old Kern ceased to be a functioning company, and it was formally dissolved in October, 1967. Tenneco Corporation exercised its option to purchase Occidental's holdings of the Tenneco preference stock in December, 1967.

Of the instant suits, Actions Nos. 1 and 2 were filed prior to the closing of the Tenneco-Old Kern Plan, and contained, *inter alia,* causes of action under Section 16(b). New Kern brought Action No. 3 after the closing and asserted liability only under Section 16(b). Thereafter, another stockholder of Old Kern, Colonial Realty Corporation, initiated Action No. 4 against Occidental, in which it too sought to recover for Old Kern any Section 16(b) profits made by Occidental. In an order dated June 14, 1968, the late Judge Herlands of this Court consolidated Actions Nos. 1, 2 and 4, i. e., those brought by former stockholders of Old Kern, for pre-trial purposes and appointed general counsel to supervise pre-trial matters in those actions. Abrams v. Occidental Petroleum Corp., 44 F.R.D. 543 (S.D.N.Y.1968). In these derivative shareholder actions, profits are sought to be recovered from Occidental by way of motions for summary judgment in favor of Old Kern (Actions 1 and 4) and by a similar motion as well as a prayer for declaratory judgment in favor of Old Kern or New Kern (Action No. 2).

Additionally, New Kern, plaintiff in Action No. 3, has moved for summary judgment on its four causes of action under Section 16(b). Basing its right to receive any recovery on the terms of the Tenneco-Old Kern Plan, and on a specific assignment on August 30, 1967, from Old Kern to New Kern of any Securities Exchange Act claims that might accrue, New Kern argues, and this Court agrees, that Occidental's lia-

bility should be predicated upon a matching of the total number of shares of Old Kern stock acquired in the May, 1967 tender offer with the disposition of these shares through Occidental's grant of the June 2 option to Tenneco Corporation and by way of the closing of the Tenneco-Old Kern Plan on August 30, 1967.

Also before the Court is a motion by the defendant Occidental for summary judgment seeking (1) dismissal of all Section 16(b) causes of action in Actions Nos. 1, 2 and 4, on the ground that the stockholder plaintiffs lack standing to sue, or (2) in the alternative, for an order pursuant to Rule 42(b), Fed.R.Civ. P., directing a separate trial on the issue of standing to sue in advance of any trial on the merits.

The findings of fact and conclusions of law which follow are intended to amplify and supplement what is set forth above. There is no genuine issue as to any material facts upon which they are based. Rule 56(c), Fed.R.Civ.P. Now Kern's motion for summary judgment is granted. The summary judgment motions of plaintiffs in Actions Nos. 1, 2 and 4, similarly based upon 16(b) violations are denied solely because they are deemed moot by the decision in favor of New Kern. The motions of defendant Occidental are denied.

*Findings of Fact*

1. In the spring of 1967, Occidental determined to attempt an acquisition of Old Kern. On April 24 and April 28, 1967, Occidental purchased a total of 1900 shares of Old Kern stock on the open market. No Section 16(b) liability is asserted with respect to these shares, since Occidental was not at that time, nor did it become by virtue of those purchases, a beneficial owner of more than 10 percent of Old Kern's issued and outstanding stock.

2. In the belief that ownership of a large block of Old Kern stock would cause the management of Old Kern to be amenable to discussions of merger or consolidation, on Monday, May 8, 1967, Occidental announced a public tender of-

fer with respect to the stock of Old Kern. The terms of the offer were published in more than 50 publications throughout the country beginning on May 9. The tender offer, to expire June 8, 1967, committed Occidental to "purchase all shares properly tendered by the expiration of the offer, up to 500,000 shares." Occidental reserved the right to purchase shares tendered in excess of 500,000. The purchase price was set at $83.50 per share, and Occidental undertook to pay an additional $1.50 commission per share on all shares tendered through a broker; for the purposes of the motions now before the Court, the parties accept the figure of $85.00 as Occidental's per share cost of acquisition.

3. The closing price of Old Kern's stock on the New York Stock Exchange on Friday, May 5, 1967, the last trading date prior to the announcement of the tender offer, was $63.625 per share.[2] As of May 10, 1967, Old Kern had exactly 4,328,140 shares of stock issued and outstanding.

4. Sometime after the tender offer and in May, 1967, the president and executive vice-president of Occidental appeared at the offices of Old Kern in San Francisco and announced to Old Kern's president that they were there to discuss the terms of a merger. Old Kern's president refused to discuss the matter.

5. By May 10, 1967, more than 500,000 shares of Old Kern stock had been tendered to Occidental, enough to make Occidental a beneficial owner of more than 10 percent of Old Kern's issued and outstanding stock. Occidental thereupon, on May 11, extended the tender offer to encompass an additional 500,000 shares; the other terms and conditions remained unchanged. On May 18, 1967, Occidental, as such beneficial owner, filed a Form 3, Initial Statement of Beneficial Ownership of Securities, with the Securities and Exchange Commission, indicating direct ownership of 507,055 shares of Old Kern stock; on June 9, 1967, Occidental filed a Form 4, Statement of Changes in Beneficial Ownership of Securities, for the month of May, indicating the purchase of an additional 376,326 shares of Old Kern stock, for a total ownership as of May 31, 1967, of 883,381 shares. An additional 4,168 shares were purchased by June 8, 1967, so that as of June 30, 1967, Occidental held 887,549 shares of Old Kern stock in direct ownership.

6. The management of Old Kern vigorously resisted Occidental's tender offer, writing a letter to stockholders on May 10, 1967, cautioning against tender and indicating that Occidental's offer might not have been the best available since the Old Kern management was then carrying on merger discussions with several other companies. When Occidental extended its tender offer, the president of Old Kern sent a telegram to all stockholders again requesting that shareowners refrain from tendering their stock.

7. Upon becoming the beneficial owner of more than 10 percent of Old Kern's stock, at least the following possibilities were available to Occidental, as Old Kern's largest stockholder:

1. Old Kern might have been induced to buy out Occidental's interest in the company, at a profit to Occidental;

2. Any company which merged with, or succeeded to the business of, Old Kern might have been induced to buy out Occidental's interest, at a profit to Occidental;

3. Occidental might have been able to take over the management of Old Kern;

2. There seems to be an inconsistency between the first tender offer (New Kern's Exhibit A) and the extended or second tender offer (see *infra*, Finding of Fact No. 5; New Kern's Exhibit B) insofar as the price range for 1966 in Old Kern stock is concerned. While the high is consistently stated to be $76¼, the low is stated to be $56 in Exhibit A and $51¾ in Exhibit B.

4. Occidental might have been able to veto a takeover of Old Kern by any other company; or

5. Occidental might have retained its interest in Old Kern or in any new company formed by merger, wielding considerable influence in the policies and operations of the company in either event.

At least alternatives 1 and 2 would present the possibility for speculative abuse by Occidental of its position in Old Kern, as that term is understood within the purview and intendment of Section 16 (b). Apart from the abuse of inside information, which is presumed to exist under the statute, the possibilities of abuse in the factual context of this case can readily be envisaged. For example, Occidental could have used inside information to enable it to decide whether or not to fight the merger or sell its stock.[3] Indeed Occidental elected to enter into the option agreement.

8. On May 19, 1967, Old Kern's board of directors approved an offer made by Tenneco under which, in exchange for the transfer of all of Old Kern's assets and business, Old Kern's stockholders were to receive, for each share of Old Kern stock held, one share of a new $5.50 cumulative convertible preference stock to be issued by Tenneco. The annual dividend of $5.50 per share on the new Tenneco stock was more than double the current annual dividend rate of $2.60 per share on the Old Kern stock; each share of the new Tenneco preference stock was convertible into 3.6 shares of Tenneco common stock. Occidental, as an owner of 887,549 shares of Old Kern stock, would receive a like number of the new Tenneco shares. In a progress report to its shareholders on May 19, 1967, the president of Occidental estimated that the value of the Tenneco preference stock was equivalent to $105 per share.

The acceptance of the Tenneco offer by Old Kern's board was announced pub-licly the same day. In approving the transaction with Tenneco, the Old Kern board simultaneously rejected an oral offer which Occidental had made to it the same day.

9. As a result of the impending Tenneco-Old Kern reorganization, the president of Occidental stated in the said progress report of May 19, 1967, that based on the approximately 900,000 shares which Occidental had purchased, a profit of about 18 million dollars was indicated.

10. The details of the Tenneco-Old Kern transaction approved by the Old Kern board on May 19, 1967, were subsequently set out in a detailed Agreement and Plan of Reorganization, dated June 1, 1967. Under paragraph 7.1 of the Plan, Old Kern agreed to transfer, and New Kern agreed to accept

all of the assets and properties, business and goodwill of [Old] Kern of every kind and description * * * including without limitation all properties, tangible or intangible, real, personal or mixed, accounts receivable, bank accounts, choses in action, claims, cash and all securities * * *.

Under paragraph 7.3 of the Plan, Old Kern agreed that

it will convey, transfer, assign and deliver to [New Kern] all properties, claims, choses in action, rights, and other assets which [Old] Kern may acquire or to which it may become entitled on or after the Closing Date * * *.

Tenneco agreed in paragraph 7.5 to have New Kern deliver to Old Kern an aggregate number of shares of the new Tenneco preference stock equal to the number of shares of Old Kern issued and outstanding on the closing date. Old Kern agreed to have this new stock distributed promptly to the holders of Old Kern stock, in exchange for the surrender of the Old Kern stock then held by the shareowners. The Tenneco pref-

---

3. In the period May 20–June 2, 1967, Occidental, as Old Kern's largest stock-holder, demanded and received access to books and records of the company.

erence stock would be issued as an unregistered security.

The obligations of the parties under the Plan were contingent on shareholder approval of the transaction, approval by counsel, favorable rulings from the Internal Revenue Service on the tax consequences of the transaction to Old Kern and its shareholders, and the obtaining of all permits, licenses and authorizations necessary from the California Division of Corporations.

Under paragraph 7.9 of the Plan, the closing under the plan was to take place between September 30 and December 31, 1967, on a date to be agreed upon by the parties, or "at such other time * * as the parties may agree upon." Under paragraph 15.2(i), the parties retained the power to amend the Plan by mutual consent, without shareholder approval, to

> change the time for performance of any of the obligations or activities of the parties hereto, including changes of the time and place of the Closing.

The parties also retained the power to waive by mutual consent compliance with any of the covenants and conditions of the Plan and to waive or modify performance by the parties of any of the obligations therein. Plan, ¶ 15.2(iii).

11. On May 25 and May 31, 1967, Occidental initiated two mandamus actions in the California state courts seeking extensive inspection of the books and records of Old Kern, including the stockholder lists. Old Kern made available to Occidental some of the items sought, but did not produce the lists of stockholders. Following the signing of the Occidental-Tenneco Corporation option agreement of June 2, 1967, described in paragraph 12 below, these suits were dismissed at Occidental's direction on the basis of an undertaking by Tenneco not to register or list its newly issued preference stock until the exercise date of the option had passed.

12. Between May 30 and June 2, 1967, while the formulation of the Tenneco-Old Kern Plan was being completed, Occidental and Tenneco Corporation, a Tenneco subsidiary which was to be the immediate parent of New Kern within the Tenneco family, negotiated an option agreement with respect to the shares of the new Tenneco preference stock Occidental would become entitled to receive upon the closing of the Tenneco-Old Kern Plan. This agreement was signed June 2, 1967. Following a recital that Tenneco Corporation was desirous of obtaining an option to purchase the shares of Tenneco stock to be received by Occidental, the agreement provided that Occidental granted to Tenneco Corporation an option to purchase, when and if issued, all of the Tenneco shares received by Occidental with respect to its holdings in Old Kern stock, stated to be 886,623 shares. The aggregate purchase price was $93,095,415, or $1.05 per share, excluding certain dividends hereinafter discussed. Tenneco Corporation could exercise the option at any time after December 9, 1967. If the closing of the Tenneco-Old Kern Plan occurred prior to December 10, 1967, the option expired on December 31, 1967; if the closing were held between December 10, 1967, and July 1, 1968, the option expired on the thirtieth day after the closing date.

Tenneco paid Occidental $8,866,230, i. e., $10 per share of Old Kern stock then thought to be held by Occidental, pursuant to the agreement, this amount to be credited against the purchase price of the Tenneco preference stock but to be returned to Tenneco if no closing of the Tenneco-Old Kern Plan occurred before July 31, 1968.

It was agreed that Occidental would receive outright two dividends on the Old Kern and Tenneco preference stock for the third and fourth quarters of 1967; any dividends accruing in 1968 to Occidental would be divided pro rata, the division being dependent on the date on which the option was exercised. A final recital stated that the June 2, 1967, document constituted the entire agreement between Occidental and Tenneco Corporation.

Occidental sought to arrange a liquidation of its position in Tenneco's unregistered securities, while Tenneco sought to eliminate a potentially troublesome minority stockholder. The price per share, $105, was the value which Occidental had attributed to the Tenneco stock a short time before June 2, 1967, the date of the aforesaid option agreement.

13. Coincident with the signing of the option agreement, Occidental sought from the SEC a new rule, Rule 16(b)–11, which would exempt Occidental from the operation of Section 16(b) with respect to the Tenneco-Old Kern transactions. Occidental was aware that the closing of the Tenneco-Old Kern Plan might constitute a "sale" of Occidental's stockholdings in Old Kern, which, when matched with Occidental's acquisition of the stock within the previous six months, would impose liability upon Occidental to disgorge the profit received in the acquisition and disposition. Occidental believed at that time that the SEC would adopt the rule of exemption Occidental had proposed. However, on July 12, 1967, the SEC declined to publish for comment any proposed rule for the type of transaction involved. Occidental continued to press for such a rule, securing a formal hearing before the SEC on August 29, 1967, on the proposed rule and filing with the Commission on September 5, 1967, a 30-page letter memorandum arguing for it. Nevertheless, the SEC refused to modify its decision not to take action.

14. As early as June 6, 1967, Occidental had determined that, if the SEC did not provide it relief in the form of the proposed rule 16(b)–11, the company's only alternative was "to commence every kind of litigation it could reasonably bring and attempt to stall the consummation of the Tenneco-[Old Kern] transaction for six months." Letter of Occidental's San Francisco counsel to F. Arnold Daum, Esq., June 6, 1967, attached as Exhibit "U" to affidavit of David E. Hyde, Esq. dated May 6, 1970.

On August 7, 1967, a holder of 200 shares of Old Kern stock brought a state court action in Midland County, Texas, to enjoin the consummation of the Tenneco-Old Kern plan; the plaintiff obtained a temporary restraining order the same day. The court thereafter dissolved the temporary restraining order and denied plaintiff's motion for a preliminary injunction. Similar suits, initiated by the same plaintiff, his company, Harjean Co., or his close associates, were brought on August 16 in the United States District Court for the Northern District of California; on August 17 in the United States District Court for the District of Nebraska, where the plaintiff obtained a temporary restraining order on August 22; and in the County Court of rural Knox County, Texas, where the plaintiff Harjean Co. obtained a temporary restraining order prior to August 22.

In a suit brought on August 23 in Midland County, Texas, in an effort to put an end to these suits, Tenneco, Old Kern and New Kern obtained an *ex parte* order enjoining Occidental and the defendants who had initiated the previous suit seeking to delay the closing of the Plan, from taking any further action in those suits except to have them dismissed. Plaintiffs agreed to a nonsuit in this action after the closing of the Tenneco-Old Kern transaction on August 30, 1967.

This spate of litigation was reviewed by Judge Brewster of the United States District Court for the Northern District of Texas in the case of 600 California Corp. v. Harjean Co., 284 F.Supp. 843 (1968). In reference to the various suits the court said that the stockholder group of plaintiffs

has been determined to keep multiforum litigation going constantly over a widespread area for the purpose of delaying the consummation of the plan, if not to defeat it, knowing all the time that they had no chance of winning the litigation. 284 F.Supp. at 856.

Judge Brewster found that Occidental was the moving force behind this litigation and that this repetitious litigation in different courts of the country was oppressive and vexatious to Tenneco and Old Kern. 284 F.Supp. at 861.

In any event, by August 30, 1967, all obstacles to the Tenneco-Old Kern closing arising from these suits had been abated, with the exception of the restraining order issued by the Knox County Court, and the plaintiffs in that suit were enjoined from taking any action in the case except to have it dismissed.

15. The Tenneco-Old Kern Plan was presented to the Old Kern shareowners at a stockholders' meeting on July 17, 1967. The board of directors, in the proxy statement sent to Old Kern stockholders in relation to the meeting, strongly urged approval of the Plan, and prior to the meeting date had received sufficient proxies to ensure adoption of the Plan regardless of Occidental's position.

Occidental, in a letter dated July 14 and read at the July 17 meeting, chose not to oppose the Plan and stated that its decision had been reached prior to the June 2 option agreement with Tenneco Corporation. While refraining from voting its shares at the July 17 meeting, Occidental went to pains to indicate that it did not view the Plan as unfair or inequitable to Old Kern stockholders and that, if it had the right to an appraisal, it would not exercise such right but rather would vote in favor of the sale of assets.

The Plan was easily approved by Old Kern's stockholders at the July 17 meeting.

16. The Internal Revenue Service issued on August 4, 1967, the ruling sought by Tenneco and Old Kern, indicating that the consummation of the Plan would result in a tax free exchange with no taxable gain or loss to the shareholders of Old Kern. Application to the California Commissioner of Corporations was made immediately to secure the necessary permits and authorizations for the closing, but action was put off when the Commissioner was informed of the first stockholder suit brought in Texas. Occidental directed a 14-page letter to the Commissioner on August 11, 1967, arguing against the Commissioner's approval of the transaction. Nevertheless, the necessary approvals were given on August 30, 1967.

17. On the same date as approval was received from the Commissioner of Corporations, August 30, 1967, the closing of the Tenneco-Old Kern Plan was held in San Francisco. Old Kern's name was changed to 600 California Corporation, and an election to wind up and dissolve was filed by Old Kern with the California Secretary of State. All of the assets and business of Old Kern were transferred to New Kern, and Old Kern deposited the shares of new Tenneco preference stock it received with the designated exchange agent. Irrevocable instructions were given the exchange agent for distribution of the Tenneco stock to Old Kern shareholders upon receipt of their Old Kern shares.

As part of the closing, Old Kern on August 30, 1967, issued to New Kern, pursuant to the Plan, a document irrevocably transferring and assigning to New Kern

all claims, demands, rights and choses in action accrued or to accrue under and by virtue of the Securities Exchange Act of 1934 * * * and all of the rules and regulations promulgated by the Securities and Exchange Commission to the date hereof.

18. On August 31, 1967, Old Kern sent a letter to all stockholders announcing that the closing had occurred the previous day and that Old Kern shareowners were then irrevocably entitled to receive the new Tenneco stock; the procedure for receipt of the new Tenneco shares was indicated. On October 6, 1967, a certificate of dissolution was filed with the California Secretary of State. Trading was continued in the Old Kern stock on the New York and

Pacific Coast exchanges until October 13 and October 16, 1967, respectively. The new Tenneco stock was to be registered by December 31, 1967, but the stock could be traded before that date in the over-the-counter market.

19. On December 11, 1967, by letter hand-delivered to the exchange agent, Occidental tendered its shares of Old Kern stock certificates, a total of 887,549 shares, including the 1900 shares purchased in April, 1967, on which no Section 16(b) liability is premised in the instant suit, for conversion into a like number of shares of the Tenneco preference stock. On the same day, a closing was held between Tenneco Corporation and Occidental under the option agreement of June 2, 1967. Occidental received a total of $93,095,415, which included the $8,866,230 previously paid by Tenneco Corporation on the option.

The Tenneco preference stock was registered with the SEC on December 28, 1967.

20. On or about September 21, 1967, Occidental received a dividend from New Kern of $575,671.85 payable on its holding of Old Kern stock. Occidental also received, on or about January 9, 1968, a dividend in the amount of $1,217,767.37 payable for the final quarter of 1967 on the new Tenneco preference stock.

*Conclusions of Law*

1. This Court has jurisdiction of the parties and of the subject matter of these actions. Securities Exchange Act of 1934 §§ 16(b), 27, 15 U.S.C. §§ 78p(b), 78aa.

2. At all times relevant herein, up to and including August 30, 1967, the capital stock of Old Kern, a class of nonexempted equity security, was registered on the New York and Pacific Coast stock exchanges pursuant to Section 12 of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78*l*.

3. On May 8, 1967, Occidental made a public tender offer to purchase for cash up to 500,000 shares of the said capital stock of Old Kern at a price of $85.00 per share; and on May 11, 1967, Occidental increased its public tender offer to encompass 1,000,000 shares. As a result of the aforesaid tender offer and between May 8, 1967 and June 8, 1967, Occidental purchased and became the beneficial owner of 885,649 shares of the capital stock of Old Kern; these shares, when coupled with 1900 shares purchased by Occidental in April, 1967, gave Occidental ownership of a total of 887,549 shares of Old Kern capital stock.

As of May 10, 1967, Old Kern had 4,328,140 shares of capital stock issued and outstanding. By that date, Occidental had acquired more than 500,000 shares of the Old Kern stock; it had thus become, by way of the single tender offer, the beneficial owner of more than 10 percent of the capital stock of Old Kern, i. e., a statutory insider within the meaning and purview of Section 16(b). The tender offer constituted a single act of Occidental, whereby the company became a beneficial owner of more than 10 percent of Old Kern's capital stock. Stella v. Graham Paige Motors Corp., 232 F.2d 290, 300 (2d Cir.), cert. denied 352 U.S. 831, 77 S.Ct. 46, 1 L.Ed.2d 52 (1956); see Newmark v. RKO General, Inc., 425 F.2d 348 (2d Cir. 1970), cert. denied 400 U.S. 854, 91 S.Ct. 64, 27 L.Ed.2d 91 (1970); Kahansky v. Emerson Radio & Phonograph Corp., 184 F.Supp. 90, 94 (S.D.N.Y. 1960).

4. On June 2, 1967, Occidental concluded an option agreement with Tenneco Corporation; under the terms of the agreement Occidental granted Tenneco an option to purchase the shares of Tenneco preference stock which Occidental would receive upon consummation of the Tenneco-Old Kern Plan, by virtue of its holdings of Old Kern stock. The purchase price of the option agreement was $93,095,415.00. In consequence of the option agreement, Occidental disposed of its holdings in Old Kern stock at a profit of about $20 per share, amounting to a total profit of $17,712,980 attributable

to the purchase and disposition of the 885,649 shares acquired through the May, 1967, tender offer. This profit falls within the meaning and purview of Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), and is recoverable in the present litigation. Blau v. Lamb, 363 F.2d 507, 516 (2d Cir. 1966), cert. denied, 385 U.S. 1002, 87 S. Ct. 707, 17 L.Ed.2d 542 (1967); see, Emerson Electric Co. v. Reliance Electric Co., 306 F.Supp. 588, 591 (E.D.Mo. 1969), modified on other grounds, 434 F.2d 918 (8th Cir. 1970); Bershad v. McDonough, 300 F.Supp. 1051 (N.D.Ill. 1969); Blau v. Allen, 163 F.Supp. 702 (S.D.N.Y. 1958).

5. At the closing when Occidental became irrevocably entitled to receive shares of the newly issued Tenneco preference stock having a value to Occidental, because of the option agreement, of $105 per share, in exchange for its holdings of Old Kern stock, Occidental realized a profit within the meaning of Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), of $17,-712,980.00. Blau v. Lamb, supra; Blau v. Mission Corp., 212 F.2d 77, 80 (2d Cir.), cert. denied, 347 U.S. 1016, 74 S. Ct. 872, 98 L.Ed. 1138 (1954); Smolowe v. Delendo Corp., 136 F.2d 231, 235–237 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943); Newmark v. RKO General, supra; see, Booth v. Varian Associates, 334 F.2d 1 (1st Cir. 1964), cert. denied, 379 U.S. 961, 85 S.Ct. 681, 13 L.Ed.2d 556 (1965); Marquette Cement Mfg. Co. v. Andreas, 239 F.Supp. 962 (S.D.N.Y. 1965); Blau v. Hodgkinson, 100 F.Supp. 361 (S.D.N.Y. 1951).

6. By reason of the aforesaid transactions, Occidental engaged in a purchase and sale and realized profits recoverable under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S. C. § 78p(b).

7. By virtue of the terms of the Tenneco-Old Kern Plan, and of the terms of the specific assignment from Old Kern to New Kern on August 30, 1967, of all actual and potential claims arising under the Securities Exchange Act of 1934, any amounts recovered in this litigation inure and belong to New Kern. Newmark v. RKO General, supra; Western Auto Supply Co. v. Gamble-Skogmo, Inc., 348 F.2d 736 (8th Cir. 1965), cert. denied 382 U.S. 987, 86 S.Ct. 556, 15 L.Ed.2d 475 (1966). See Emerson Electric Co. v. Reliance Electric Co., supra.

8. New Kern is entitled to recover from Occidental the sum of $17,712,980, constituting profits recoverable under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). The transactions which give rise to this conclusion may be spelled out as follows:

(1) Occidental purchased through its public tender offer in May, 1967, 885,649 shares of Old Kern stock at $85.00 per share, for a total purchase price of $75,-280,165.

(2) On June 2, 1967, within six months of its May purchase of more than 10% of Old Kern stock, Occidental, by way of the option, disposed of 886,623 of its shares of Old Kern stock for a total payment of $93,095,415, or $105 per share.

(3) On August 30, 1967, within six months of its May purchase of more than 10 percent of Old Kern stock, Occidental became entitled to receive, in exchange for its holdings of Old Kern stock, 887,-549 shares of the Tenneco preference stock, which Occidental valued at $105 per share in its option agreement of June 2, 1967.

(4) The total value Occidental received, either by way of the option agreement or by way of the August 30 closing, with respect to the 885,649 shares purchased in the May tender offer, was $92,993,145, exclusive of two dividends hereinafter referred to.

(5) For the purposes of Section 16(b), 15 U.S.C. § 78p(b), Occidental thus reaped a profit, when the sale price of $92,993,145 is matched with the purchase price of $75,280,165 for the 885,649

shares of Old Kern involved, of $17,712,-980, or $20 per share.

These transactions may be summarized schematically as follows:

I. PURCHASE:

| | | | |
|---|---|---|---|
| April, 1967 | | | 1,900 shares |
| May and June, 1967 | 885,649 shares | | 885,649 " |
| at | $85 per share | | |

Price of shares
acquired through
May tender . . . . . . . . . . . $75,280,165

Total shares owned
as of June 8, 1967 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 887,549 shares

II. DISPOSITIONS:

1) Option agreement

886,623 shares sold for $93,095,415 ($105 per share)

| Amount received with respect to shares acquired in May 1967 tender offer | 885,649 shares<br>x$105 rec'd per sh.<br>$92,993,145 Total |
|---|---|

2) Closing

Per share value of
Tenneco preference
stock, derived from
June 2, 1967 option . . . . . . . . . . . . . . . . . .$105 per share

Shares acquired in May and
disposed of through closing 885,649

Total value received
with respect to these
shares . . . . . . . . . . . . . . . . . . . . . . . . . $92,993,145

III. PROFITS:

| Amount received for 885,649 shares | $92,993,145 |
|---|---|
| Amount paid for these shares | 75,280,165 |
| Profit | $17,712,980 |
| Per Share Profit | $20 |

(a) Interest shall be paid by Occidental on $17,712,980 as follows: Interest on $886,623 received by Occidental on June 2, 1967, is to be paid as of that date; interest on the $7,979,607 balance of the down payment received by Occidental on June 9, 1967, is to be paid as of that date; and interest on the remaining $8,-846,750 paid on December 11, 1967, is to be paid as of that date. Blau v. Lehman, 368 U.S. 403, 414, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962); Adler v. Klawans, 172 F.Supp. 502, 506 (S.D.N.Y. 1958).

(b) The amounts of the two dividends payable to Occidental for the third and fourth quarters of 1967 by reason of its ownership of the Old Kern and Ten-neco stock, $575,671.85 and $1,217,767.-37, respectively, may be recoverable by New Kern under Section 16(b) of the Securities Exchange Act of 1934. Blau v. Lamb, *supra*; Western Auto Supply v. Gamble-Skogmo, Inc., *supra*; Marquette Cement Mfg. Co. v. Andreas, *supra*, 239 F.Supp. at 968. No conclusion is reached, however, with respect to the inclusion of either dividend as part of the recovery herein provided. This aspect of the case has not been sufficiently developed or briefed. Since the law with respect to the recovery of dividends under Section 16(b) is in some respects unsettled and provides no facile rule of application (see, Adler v. Klawans, *supra*;

582

Western Auto Supply v. Gamble-Skogmo, Inc., *supra*; 21 U.Pitt.L.Rev. 554, 557 (1960); 45 Va.L.Rev. 1057, 1060 (1959)) decision is reserved with respect thereto. The parties may file and exchange additional papers and briefs 30 days from the date hereof.

■ 9. The affirmative defenses and counterclaims interposed by Occidental, with respect to which New Kern seeks a dismissal, are without merit. Occidental's defense that its acquisition of Tenneco preference stock was involuntary cannot be sustained, for reasons heretofore advanced in this opinion. Since Occidental's acquisition of more than 10% of Old Kern's common stock was unquestionably voluntary, Occidental thereby voluntarily assumed the obligations and burdens of a statutory insider under Section 16(b). See, Western Auto Supply Co. v. Gamble-Skogmo, Inc., *supra*; Alloys Unlimited, Inc. v. Gilbert, 319 F. Supp. 617 (S.D.N.Y. 1970). Similarly, Occidental's defenses of unclean hands and estoppel must be dismissed, the courts having repeatedly held that issuers cannot waive or by their conduct estop themselves or their stockholders from enforcing rights granted them under 16(b) for the benefit of the investing public. See, Magida v. Continental Can Co., 231 F.2d 843, 846 (2d Cir.), cert. denied 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956); Volk v. Zlotoff, 285 F.Supp. 650, 655–656 (S.D.N.Y. 1968); Marquette Cement Mfg. Co. v. Andreas, *supra*, 239 F.Supp. at 966, *and cases cited therein*; Jefferson Lake Sulphur Co. v. Walet, 104 F.Supp. 20 (E.D.La. 1952), aff'd 202 F.2d 433 (5th Cir.), cert. denied 346 U.S. 820, 74 S.Ct. 35, 98 L.Ed. 346 (1953).

(a) New Kern's motion for summary judgment is granted. Judgment is awarded against Occidental Petroleum Corporation for $17,712,980.00, with interest at the rate of 6% per annum as follows: on $886,623 received by Occidental on June 2, 1967, interest is to be paid as of that date; on the $7,979,607 balance of the down payment received by Occidental on June 9, 1967, interest is to be paid

as of that date; and on the remaining $8,846,750 paid on December 11, 1967, interest is to be paid as of that date. Decision on the recovery of dividends is reserved as set forth herein.

(b) The motions of the plaintiff stockholders in Actions Nos. 1, 2 and 4 are denied, solely because they are deemed moot in the light of the recovery awarded to New Kern.

(c) The motions of Occidental are denied with prejudice. Occidental's affirmative defenses numbered 1 through 7, and Occidental's counterclaims numbered 1, 2, 3 and 7 are dismissed with prejudice.

It is the intention of the Court to direct entry of final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure upon the disposition of the dividend issues.

## SUPPLEMENTAL OPINION

This decision is intended to settle a matter left open in this Court's opinion of November 27, 1970. What follows assumes a familiarity with that opinion. Occidental Petroleum Corporation has been held accountable to plaintiff Kern County Land Company (New Kern) pursuant to Section 16(b) of the Securities Exchange Act of 1934 for short swing profits realized on the purchase and sale of securities. Decision was reserved as to whether dividends paid to Occidental pursuant to its option agreement with Tenneco Corporation are includable in New Kern's recovery.

■ The dividends in question include $575,671.85 paid as the regular third quarter dividend of Old Kern on September 21, 1968, and $1,217,767.37 paid as the initial quarterly dividend on the Tenneco Preference Stock on January 9, 1968, a total amount of $1,793,-439.22. This Court finds both dividends are recoverable by New Kern for the reasons stated herein.

Both dividends in question were expressly contracted for in the June 2 option agreement between Occidental and Tenneco (opinion at p. 576). The divi-

dend on the Old Kern stock is clearly recoverable under the views expressed in Adler v. Klawans, 267 F.2d 840 (2d Cir. 1959) and its progeny. While denying recovery of insider dividends in that case because no profit had in fact been realized on the overall transaction, that court clearly implied that insider dividends would ordinarily be recoverable. See 21 U.Pitt.L.Rev. 554, 557 (1960). Such profits were expressly held recoverable in Marquette Cement Manufacturing Co. v. Andreas, 239 F.Supp. 962 (S.D.N.Y. 1965) and Western Auto Supply v. Gamble-Skogmo, Inc., 348 F.2d 736 (8th Cir. 1965), cert. denied 382 U.S. 987, 86 S.Ct. 556, 15 L.Ed.2d 475. Thus, this dividend declared during the period of Occidental's "insidership" come within the purview of this line of cases.

The question of the recovery of dividends on the Tenneco Preference Stock presents a different problem and one considered for the first time, we believe, by any court. The dividend on the Tenneco Preference Stock was provided for in Tenneco's Certificate of Incorporation and not subject to the kind of insider manipulation cited in *Adler, supra.* However, where such a dividend is expressly contracted for regardless of the record ownership of the stock in question, other opportunities for abuse are present. Several examples are cited in counsel's briefs, the most obvious being the situation where parties contract for a low sales price (resulting in a small capital gain) with the retention of future dividends by the seller. The purpose of the statute could be completely thwarted by arrangements of this kind.

Thus, judgment is awarded to New Kern in the amount of $1,793,439.22, interest on $575,671.85 to run from September 21, 1967, and interest on $1,217,767.37 to run from January 9, 1968.

This Court is disposed to direct the entry of a final judgment pursuant to Fed.R.Civ.P. 54(b). Parties are given fifteen days from the date of this decision to submit briefs setting forth any reasons why a final judgment should not be entered at this time, and particularly, whether the 4th, 5th and 6th counterclaims asserted by Occidental should bar the express direction of finality contemplated by Fed.R.Civ.P. 54(b).

It is so ordered.

## SECOND SUPPLEMENTAL OPINION

■ The judgment filed today in favor of New Kern contains an express direction of finality as contemplated by F.R.Civ.P. 54(b). No persuasive reason has been found for staying the entry of final judgment because of the 4th, 5th and 6th counterclaims asserted by Occidental. Additionally, there is a special appropriateness in entering a final appealable judgment with respect to all the causes of action and counterclaims arising under Section 16(b) of the Securities Exchange Act of 1934.

The 4th, 5th and 6th counterclaims asserted by Occidental have remained moribund throughout this litigation. They have never been pressed by discovery or any other action. Indeed, their presence in this litigation is the result of somewhat fortuitous circumstances and stems from claims made in an independent action brought by Occidental in the United States District Court in the Northern District of California against New Kern, Tenneco, Inc. and two officers of Old Kern. In the earlier stages of the case before this court and during its pendency before the late Judge Herlands, the California action was stayed and Occidental was given leave to interpose counterclaims "equivalent to the claims presently embodied in its California action." The essence of these counterclaims is Occidental's allegation that the assets of Old Kern were worth some $125 per share and that they were transferred to New Kern for in excess of $25 per share less than their fair value. The record before this court contains many documented facts from which contrary inferences can be drawn. Indeed the contemporaneous evaluations made by Occidental itself are not consonant with this allegation. See this court's opinion of November 27, 1970, at page 577. Additionally, the charge of

undervaluation has been made in collateral litigation in Texas, Nebraska and California and always with the same result. The allegation was considered to present little likelihood of success. See 600 California Corporation v. Harjean Company, 284 F.Supp. 843 (N.D.Texas 1968); C.M.C. Corporation v. Kern County Land Company, 290 F.Supp. 695 (N.D.Cal.1968).

It is difficult to conclude from what has just been said that the asserted counterclaims have been anything more than tactical positions of Occidental in this litigation.

Apart from what has been said there are independent overriding reasons why these counterclaims should not bar a finding of finality with respect to the judgment entered herewith. As already indicated, this judgment deals exclusively with Occidental's liability for insider profits under Section 16(b) of the Securities and Exchange Act of 1934. This statutory provision is expressive of a strong public policy to "prevent 'unfair use of information' by insiders and thereby to protect the public and outside stockholders." [Quoting 15 U.S.C. § 78p(b)]. Feder v. Martin Marietta Corp., 406 F.2d 260, 262 (2d Cir. 1969), cert. denied, 396 U.S. 1036, 90 S.Ct. 678, 24 L.Ed.2d 681 (1970). There is no comparable public interest affecting the 4th, 5th and 6th counterclaims. They are plainly private claims for monetary damages inuring to Occidental. To delay entry of this judgment pending resolution of Occidental's counterclaims would stultify the public policy embodied in Section 16(b).

It is noteworthy in this connection that during the course of the transactions which constitute the factual background of this lawsuit, Occidental sought unsuccessfully to obtain a ruling from the Securities and Exchange Commission exempting it from any liability under Section 16(b). See opinion of November 27, 1970, page 572.

Under the circumstances presented by the undisputed facts of this case, there is no persuasive reason for denying the motion of New Kern under Rule 54(b) in the form substantially proposed by it.

In fixing interest on the judgment at the rate of 7½% this court accepts and follows two recent decisions by Judge Tyler and by Judge MacMahon of this court. Lee National Corp. v. Kansas City Southern Industries, Inc., 50 F.R.D. 412, 414 (S.D.N.Y.1970); Rock Transport Properties Corp. v. Hartford Fire Insurance Co., 312 F.Supp. 341, 348–349 (S.D.N.Y.1970); cf., Caldecott v. Long Island Lighting Co., 417 F.2d 994 (2d Cir. 1969).

Lastly, Occidental has expressed its intention to appeal from any judgment entered against it, and requests a stay "without supersedeas bond pending the final determination of its remaining counterclaims." This request is denied.

■ Since both New Kern and Occidental dispose of abundant assets, and since the judgment about to be entered in favor of New Kern, despite its substantial size, can be met by Occidental, a stay is granted pending the disposition of the appeal of the 16(b) issues only and on the following conditions: that Occidental file its notice of appeal within ten (10) days of the date of filing of the judgment; that Occidental post a supersedeas bond in the sum of one million dollars; and that Occidental pursue its appeal with the utmost diligence.

Appropriate judgments are filed herewith in the New Kern case and in the companion cases rendered moot by the New Kern decision.